**No. 12-6122**

IN THE

# United States Court of Appeals

## FOR THE SIXTH CIRCUIT

◆◆◆

KENNETH M. SEATON

d/b/a Grand Resort Hotel and Convention Center,

*Appellant,*

— v. —

TRIPADVISOR, LLC

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

**BRIEF OF *AMICUS CURIAE* DIGITAL MEDIA LAW PROJECT
SUPPORTING THE APPELLEE AND URGING AFFIRMANCE**

CHRISTOPHER T. BAVITZ
CYBERLAW CLINIC
Harvard Law School
Berkman Center for Internet & Society
23 Everett Street, 2nd Floor
Cambridge, MA 02138
Tel: 617-495-7547
Fax: 617-495-7641

*Attorneys for Amicus Curiae
Digital Media Law Project*

On the brief:

Jeffrey P. Hermes
Andrew F. Sellars
Digital Media Law Project
Berkman Center for Internet & Society
Harvard University
23 Everett Street, 2nd Floor
Cambridge, MA  02138

## RULE 26.1 DISCLOSURE

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, *amicus*, the Digital Media Law Project, makes the following disclosure:

1.    Is *amicus* a subsidiary or affiliate of a publicly owned corporation? No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? No publicly owned corporation or other publicly held entity has a direct financial interest in the outcome of this litigation due to the participation of the *amicus*.


<u>/s/ Christopher T. Bavitz</u>
Christopher T. Bavitz

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF INTEREST OF *AMICUS* ........................................... 1

SUMMARY OF ARGUMENT ............................................................... 1

ARGUMENT ....................................................................................... 4

   I.    DISMISSAL IS REQUIRED UNDER TENNESSEE LAW AND
       THE FIRST AMENDMENT ................................................. 4

      A.    TripAdvisor's "Dirtiest Hotels" List is a non-actionable
            conclusion based on the fully disclosed statements of others ......... 4

           1.    *Opinions based on disclosed facts are not actionable in
                 Tennessee* ............................................................... 6

           2.    *TripAdvisor's list is protected under the doctrine of
                 opinion based on disclosed facts* ......................... 7

      B.    The First Amendment leaves determination of the merit of
            opinions to the marketplace of ideas ............................... 11

   II.    SECTION 230 OF THE COMMUNICATIONS DECENCY ACT
       BARS LIABILITY FOR AN OPINION BASED ON THE
       STATEMENTS OF A WEBSITE'S USERS ........................... 15

   III.   PROTECTION OF CONCLUSIONS BASED ON USER-
       SUPPLIED DATA IS ESSENTIAL FOR THE FUTURE OF
       CROWDSOURCED ACADEMIC RESEARCH AND DATA-
       BASED JOURNALISM ...................................................... 17

CONCLUSION ..................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Abrams v. United States,*
250 U.S. 616 (1919) ............................................................. 14

*Aegis Sciences Corp. v. Zelenik*,
No. M2012-00898-COA-R3-CV, 2013 WL 175807
(Tenn. Ct. App. Jan 16, 2013) ........................................... 4-5

*Agora, Inc. v. Axxess, Inc.*,
90 F. Supp. 2d 697 (D. Md. 2000),
*aff'd* 11 Fed. App'x 99 (4th Cir. 2001) ............................. 10

*Aviation Charter, Inc. v. Aviation Research Grp./US*,
416 F.3d 864 (8th Cir. 2005) ............................................. 13

*Black v. Google, Inc.*,
457 Fed. Appx. 622 (9th Cir. 2011) ................................... 16

*Compuware Corp. v. Moody's Investors Servs.*,
499 F.3d 520 (6th Cir. 2007) ............................................. 12

*Falls v. Sporting News Publ'g Co.*,
834 F.2d 611 (6th Cir. 1987) .............................................. 9

*Gallagher v. E.W. Scripps Co.*,
No. 08-2153-STA,
2009 WL 1505649 (W.D. Tenn. May 28, 2009) ............. 4, 5, 7

*Johnson v. Arden*,
614 F.3d 785 (8th Cir. 2010) ............................................. 16

*Johnson v. Carnes*,
No. M2008-02373-COA-R3-CV,
2009 WL 3518184 (Tenn. Ct. App. Oct. 29, 2009) .......... 6-7

*Kersey v. Wilson*,
No. M2005-02106-COA-R3CV,
2006 WL 3952899 (Tenn. Ct. App. Dec. 29, 2006) ........................... 5 n.2, 7, 8

*Lyons v. Globe Newspaper Co.*,
612 N.E.2d 1158 (Mass. 1993) ....................................................... 13

*McWhorter v. Barre*,
132 S.W.3d 354 (Tenn. Ct. App. 2003) ............................................ 6

*Memphis Publ'g Co. v. Nichols*,
569 S.W.2d 412 (Tenn. 1978) ......................................................... 5

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) ............................................................. 5 n.2, 6

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) ........................................................ 16

*Ogle v. Hocker*,
279 Fed. App'x 391 (6th Cir. 2008) ................................................. 7

*Orr v. Argus-Press Co.*,
586 F.2d 1108 (6th Cir. 1978) ........................................................ 9

*Phila. Newspapers Inc. v. Hepps*,
475 U.S. 767 (1986) ..................................................................... 6

*Redco Corp. v. CBS, Inc.*,
758 F.2d 970 (3d Cir. 1985) ......................................................... 13

*Revis v. McClean*,
31 S.W.3d 250 (Tenn. Ct. App. 2000) ........................................... 8, 9

*Sandals Resorts Int'l. Ltd. v. Google, Inc.*,
86 A.D.3d 32 (N.Y. App. Div. 1st 2011) ........................................ 10

*Sanders v. Smitherman*,
776 So.2d 68 (Ala. 2000) ............................................................. 13

*Satterfield v. Bluhm*,
No. E2003-01609-COA-R3-CV,
2004 WL 833291 (Tenn. Ct. App. Apr. 16, 2004) ........................................ 7, 8

*Standing Comm. on Discipline v. Yagman*,
55 F.3d 1430 (9th Cir. 1995) ........................................................................ 9, 11

*Stones River Motors, Inc. v. Mid-South Publ'g Co.*,
651 S.W.2d 713 (Tenn. Ct. App. 1983) ........................................... 5, 5 n.2, 6, 8

*Sullivan v. Baptist Mem'l Hosp.*,
995 S.W.2d 569 (Tenn. 1999) ............................................................................ 4

*United States v. Alvarez*,
132 S. Ct. 2537 (2012) ..................................................................................... 14

*Wedbush Morgan Sec., Inc. v. Kirkpatrick Pattis Capital Mgmt., Inc.*,
No. 06-cv-00510, 2007 WL 1058947 (D. Colo. April 6, 2007) ...................... 12

*Windsor v. Tennessean*,
654 S.W.2d 680 (Tenn. Ct. App. 1983) ............................................................. 7

*Zius v. Shelton*,
No. E1999-01157-COA-R9-CV, 2000 WL 739466
(Tenn. Ct. App. June 6, 2000) ...................................................................... 5 n.2

## STATUTES

47 U.S.C. § 230 ........................................................................... 3, 11 n.3, 15, 16

## OTHER AUTHORITIES

*About*, Crisis Commons,
http://crisiscommons.org/about (last visited Jan. 25, 2013) ............................ 21

*Are You Being Gouged?*,
The Brian Lehrer Show (Sept. 24, 2007),
http://www.wnyc.org/shows/bl/2007/sep/24/are-you-being-gouged .............. 20

C.W. Anderson et al.,
    *Post-Industrial Journalism: Adapting to the Present* (2012),
    http://towcenter.org/wp-content/uploads/2012/11/
    TOWCenter-Post_Industrial_ Journalism.pdf ............................................ 17-18

Tara S. Behrend et al., *The Viability of Crowdsourcing
    for Survey Research*, 43 Behav. Res. Methods 800 (2011) ............................. 18

Yochai Benkler, *The Wealth of Networks* (2006) .................................................. 17

Darren C. Brabham,
    *Crowdsourcing as a Model for Problem Solving:
    An Introduction and Cases*, 14 Convergence:
    The Int'l J. of Research into New Media Techs., 75 (2008) ..................... 17 n.6

Clear Health Costs, http://clearhealthcosts.com
    (last visited Jan. 14, 2013) ........................................................................ 19, 20

*Crisis Control*, San Diego State Univ.
    News Ctr. (Sept. 10, 2010), http://newscenter.sdsu.edu/
    sdsu_newscenter/news.aspx?s=72394 ............................................................ 22

Juliette Garside, *Broadband Britain:
    how fast is your connection?*, The Guardian,
    http://www.guardian.co.uk/news/datablog/2012/
    may/08/broadband-speed-britain (last visited Jan. 15, 2013) ......................... 21

Jim Giles, *Internet Encyclopaedias Go Head to Head*,
    428 Nature 900 (2005), *available at*
    http://www.nature.com/nature/journal/v438/n7070/full
    /438900a.html .................................................................................................. 18

Dan Gillmor, *We the Media* (2006) ............................................................... 17, 18

Daniel E. Ho, *Why Affirmative Action Does
    Not Cause Black Students to Fail the Bar*,
    114 Yale L.J. 1997 (2005) ......................................................................... 14 n.5

I Paid a Bribe,
    http://www.ipaidabribe.com/bribepatterns
    (last visited Jan. 25, 2013) ............................................................ 21

Benjamin Jackson, *Which State's Voters*
    *Had To Wait the Longest, According to*
    *Their Tweets?*, Slate (Nov. 6, 2012), http://www.slate.com/
    blogs/future_tense /2012/11/06/voting_wait_times_
    which_state_s_voters_faced_the_longest_lines.html ...................................... 19

Press Release, WNYC Radio,
    WNYC Radio's The Brian Lehrer Show
    Wins Peabody Award (April 2, 2008), *available at*
    http://www.wnyc.org/press/wnyc-radios-the-
    brian-lehrer-show-wins-peabody-award ........................................................ 20

Restatement of Torts § 606(1) (1938) ...................................................... 9

Restatement (Second) of Torts § 566 (1977) ........................................... 7, 8, 9, 10

Robert D. Sack, *Protection of Opinion Under*
    *the First Amendment: Reflections on Alfred Hill,*
    *"Defamation and Privacy Under the First Amendment"*,
    100 Colum. L. Rev. 294 (2000) .......................................................... 9

Richard H. Sander, *A Systemic Analysis of*
    *Affirmative Action in American Law Schools*,
    57 Stan. L. Rev. 367 (2004) ...................................................... 14 n.5

U.S. Gov't Accountability Office,
    Health Care Price Transparency:
    Meaningful Price Information is Difficult
    for Consumers to Obtain Prior to Receiving Care (2011),
    *available at* http://www.gao.gov/products/GAO-11-791 ................................ 20

*Oil Reporter*, Intridea, http://www.intridea.com/oil-reporter#
    (last visited Jan. 25, 2013) ...................................................... 21, 22

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................. 2

Fed. R. App. P. 29 ............................................................. 1 n.1

## STATEMENT OF INTEREST OF *AMICUS*[1]

*Amicus Curiae* the Digital Media Law Project ("*Amicus*" or "DMLP," formerly the Citizen Media Law Project) provides legal assistance, training, and other resources for online and citizen media. The DMLP has a strong interest in ensuring that online journalists and media organizations are allowed to call upon the public to submit personal reviews or other information and to use that information to draw greater conclusions about the world around them.

## SUMMARY OF ARGUMENT

In this case, defendant-appellee TripAdvisor, Inc. ("TripAdvisor") was sued for defamation and false light after publishing a list based on data provided by its users (the "List"), which List stated that the plaintiff-appellant Kenneth Seaton's ("Seaton's") hotel was the dirtiest hotel in America. This form of assessment based on third-party data follows a common and powerful trend in data gathering and analysis conducted across a wide array of disciplines, including online journalism and academic research. By disclosing the basis of the opinions that it reports, TripAdvisor empowers members of the reading public to view the underlying data

---

[1] Pursuant to Fed. R. App. P. 29, *Amicus* certifies that its counsel contacted counsel for appellant and appellee to request their consent to the filing of this brief, and counsel for both appellant and appellee so consented. *Amicus* further certifies that no party or party's counsel authored the brief in whole or part, that no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and that no other person contributed money that was intended to fund preparing or submitting this brief.

and assess the credibility of TripAdvisor's conclusions for themselves. Seaton is asking this Court to substitute the public's assessment of credibility with his own personal judgment. That is repugnant to the First Amendment.

In an order dated August 22, 2012 (the "Order"), the United States District Court for the Eastern District of Tennessee granted TripAdvisor's motion to dismiss this complaint pursuant to Fed. R. Civ. P. 12(b)(6). In dismissing the complaint, the district court found that the allegedly defamatory statements at issue were not objectively verifiable facts but rather non-actionable "unverifiable" opinion. (Order at 12.) The DMLP supports the finding of unverifiable opinion below and submits this brief to provide this Court with an additional, alternative basis of finding for the defendant: as set forth herein, the DMLP argues that affirming the district court's dismissal of Seaton's complaint is appropriate under Tennessee law and the First Amendment.

Seaton has not pleaded and cannot plead facts sufficient to support a defamation claim in this case because, under Tennessee law, the statements made by TripAdvisor are opinions based on disclosed facts and are not actionable as defamation. The "Dirtiest Hotels" List constituted an opinion based on user reviews submitted to TripAdvisor's website; TripAdvisor disclosed the facts upon which it based its opinion and did not imply the existence of any undisclosed facts. Therefore, the claim against TripAdvisor should be dismissed.

This result is consistent with the "marketplace of ideas" theory underlying the First Amendment. When recipients are in full possession of the facts on which an opinion is based, they are empowered to judge the merit of the opinion for themselves. Conclusions drawn from cited data must be protected from speech-chilling litigation so as to ensure that the marketplace of ideas, and not the courtroom, remains the sole venue for debating the merits of such opinions and conclusions.

TripAdvisor is also afforded protection from any potential liability arising from its users' statements under Section 230 of the Communications Decency Act. 47 U.S.C. § 230. As an interactive computer service provider, TripAdvisor cannot be treated as the "publisher or speaker" of those underlying statements.

The protections afforded opinions based on disclosed facts and the immunities provided by 47 U.S.C. § 230 are crucial to the burgeoning production of crowdsourced academic research and journalism, which by its nature relies on facts gathered from third parties to create works that otherwise could not possibly be created by a single organization. If scholars and journalists who harness the collective intelligence of Internet users are held liable for their conclusions based on such data, legal risk could drive this innovative and efficient form of analysis out of practice. Accordingly, DMLP urges this Court to affirm the dismissal of Seaton's complaint.

## ARGUMENT

## I.     DISMISSAL IS REQUIRED UNDER TENNESSEE LAW AND THE FIRST AMENDMENT.

The lower court was correct to dismiss Seaton's complaint, because he has not pleaded facts that support a finding that TripAdvisor made a factually false statement. The statements alleged to be defamatory are instead statements of opinion based on disclosed facts. Opinions of this nature are protected by Tennessee courts, and their protection serves important interests founded in the First Amendment.

### A. TripAdvisor's "Dirtiest Hotels" List is a non-actionable conclusion based on the fully disclosed statements of others.

Seaton's complaint fails to allege facts that could lead to a finding of defamation. In Tennessee, a claim for defamation requires a plaintiff to plead facts sufficient to show "(1) . . . a false statement of fact; (2) that has a defamatory meaning toward the plaintiff; (3) that was published by the defendant; (4) that was the proximate cause of damages to plaintiff; and (5) that the defendant acted with the requisite degree of fault." *Gallagher v. E.W. Scripps Co.*, No. 08-2153-STA, 2009 WL 1505649, at *6 (W.D. Tenn. May 28, 2009) (citing *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999)); *accord. Aegis Sciences Corp. v. Zelenik*, No. M2012-00898-COA-R3-CV, 2013 WL 175807 at *5 (Tenn. Ct. App. Jan 16, 2013).

4

It is a matter of law for the court to determine whether a statement at issue is "capable of being understood as defamatory." *Gallagher*, 2009 WL 1505649, at *6 (citing *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978)). While most courts have limited the term "defamatory" to only reference the required element that a statement holds the plaintiff up to scorn or ridicule, the Tennessee Court of Appeals has used this "capable of being understood as defamatory" inquiry to examine *both* whether, as a matter of law, statements are false assertions of fact, *see Stones River Motors, Inc. v. Mid-South Publ'g Co.*, 651 S.W.2d 713, 719-22 (Tenn. Ct. App. 1983) (finding that defendant's description of a transaction with an auto dealer as a "rip-off" was not actionable as a matter of law because "the headline appears to be [defendant's] comment on or opinion of the series of transactions thereafter described in his letter"),[2] and whether, as a matter of law, statements can be understood to harm plaintiffs' reputations, *see McWhorter v. Barre*, 132 S.W.3d 354, 365 (Tenn. Ct. App. 2003) (finding statements "capable of

---

[2] Despite negative language in *Zius v. Shelton*, No. E1999-01157-COA-R9-CV, 2000 WL 739466, at *3-4 (Tenn. Ct. App. June 6, 2000), the continuing validity of *Stones River* following the Supreme Court's decision in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), is clear. *See Kersey v. Wilson*, No. M2005-02106-COA-R3CV, 2006 WL 3952899, at *6 (Tenn. Ct. App. Dec. 29, 2006) (relying on *Stones River* to hold that a statement in question "is clearly opinion only, and . . . therefore . . . is not defamatory"). Furthermore, nothing in *Zius* calls into question the rule from *Stones River* that opinions based on disclosed facts are not actionable. *See Zius*, 2000 WL 739466, at *3 (noting that the court "has recognized the distinction between 'opinions' made in *Stones River Motors* from 'opinions' that imply false and defamatory facts").

a defamatory meaning" because they "held the [p]laintiff up to disgrace or ridicule"). When a plaintiff fails to plead facts sufficient to meet one or both of these prongs, the statement is not actionable as a matter of law, and the claim should be dismissed. *See Stones River*, 651 S.W.2d at 719-22 (rejecting statements as opinion as a matter of law while not deciding if they caused contempt or ridicule).

### 1.  Opinions based on disclosed facts are not actionable in Tennessee.

The element of factual falsity is required under Tennessee law and the First Amendment. The Supreme Court has held that a plaintiff must prove that a statement is false in order to sustain a claim for defamation. *Phila. Newspapers Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (noting that some speech will be "unknowably true or false" and that when the burden of showing a provably false statement is placed on the plaintiff, this burden is dispositive); *see also Milkovich*, 497 U.S. at 16 (explaining that in *Hepps*, "the Court fashioned a constitutional requirement that the plaintiff bear the burden of showing falsity").

Tennessee courts recognize three types of statements that are non-actionable because they are not provably false. First, statements of "simple opinion" that do not "involve matters of fact" do not give rise to liability for defamation. *Johnson v. Carnes*, No. M2008-02373-COA-R3-CV, 2009 WL 3518184, at *5 (Tenn. Ct. App. Oct. 29, 2009) (statement that plaintiff was a "bad influence" was not

6

actionable). Second, a defendant cannot be held liable for "hyperbole [or] imaginative expression," that is, statements that are facially statements of fact but in their proper context are understood to not invoke a literal reading. *Gallagher*, 2009 WL 1505649, at *13 (finding in a false light case that statements were non-actionable as "loose, figurative or hyperbolic language"); *see also Ogle v. Hocker*, 279 Fed. App'x 391, 397 (6th Cir. 2008) (rhetorical exaggeration and hyperbole are protected by the First Amendment). Finally, statements of opinion that are accompanied by references to underlying facts are only actionable if they "imply the allegation of undisclosed defamatory facts as the basis for the opinion." *Satterfield v. Bluhm*, No. E2003-01609-COA-R3-CV, 2004 WL 833291, at *5 (Tenn. Ct. App. Apr. 16, 2004); *see also id.* n.2 (citing Restatement (Second) of Torts § 566). "One may not recover in actions for defamation merely upon the expression of an opinion which is based upon disclosed, nondefamatory facts, no matter how derogatory it may be." *Windsor v. Tennessean*, 654 S.W.2d 680, 685 (Tenn. Ct. App. 1983); *accord. Kersey*, 2006 WL 3952899, at *6.

### 2. *TripAdvisor's list is protected under the doctrine of opinion based on disclosed facts.*

The district court held that the statements at issue fit within the first and second categories of non-actionable speech, that of both purely subjective opinion and "clearly unverifiable rhetorical hyperbole." (Order at 12.) The DMLP fully

agrees with this analysis, but the Court may also rule in favor of TripAdvisor

without such characterization. The statement is also non-actionable because it is an

opinion based on fully disclosed facts and thus fits within the third of these

categories.

Tennessee courts follow the Restatement on opinions based on disclosed

facts. *See Stones River*, 651 S.W.2d at 721 (citing Restatement (Second) Torts

§566 and Illustration 5 thereof); *see also Kersey*, 2006 WL 3952899, at *6 (citing §

566); *Satterfield*, 2004 WL 833291, at *5, n.2 (same); *Revis v. McClean*, 31

S.W.3d 250, 253 (Tenn. Ct. App. 2000) (same)*.* The Restatement (Second) of Torts

explains that "[a] defamatory communication may consist of a statement in the

form of an opinion, but a statement of this nature is actionable only if it implies the

allegation of undisclosed defamatory facts as the basis for the opinion."

Restatement (Second) of Torts § 566. "A simple expression of opinion based on

disclosed or assumed nondefamatory facts is not itself sufficient for an action of

defamation." *Id.* § 566 cmt. c.

The breadth of this defense was recognized by the drafters of the second

Restatement, who viewed section 566 as a substantive expansion on the first

Restatement's "fair comment" defense. Robert D. Sack, *Protection of Opinion*

*Under the First Amendment: Reflections on Alfred Hill, "Defamation and Privacy*

*Under the First Amendment"*, 100 Colum. L. Rev. 294, 310 (2000); *see*

Restatement of Torts § 606(1) (1938). Liability attaches only if the speaker also publishes a false statement of fact (and the other elements of defamation are met) or if the speaker's opinion implies undisclosed, defamatory facts.

Because a statement of opinion is only actionable if it implies the allegation of undisclosed, defamatory facts, a court should ask whether the statements at issue "may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion about the plaintiff or his conduct." *Falls v. Sporting News Publ'g Co.*, 834 F.2d 611, 616 (6th Cir. 1987) (using the Restatement to interpret Michigan defamation law); *see also Revis*, 31 S.W.3d at 253. This Court has construed this question as turning on whether the disclosed facts were "the only basis" for the speaker's opinion, *Orr v. Argus-Press Co.*, 586 F.2d 1108, 1115 (6th Cir. 1978). It is, moreover, inappropriate to consider other possible non-disclosed facts when the opinion "was carefully phrased in terms of an inference drawn from the facts specified." *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995).

Furthermore, a speaker cannot be held responsible if an opinion is explicitly based upon statements published by another, even if those statements contain false allegations of fact. The Restatement illustrates this as follows:

> A says to B about C, a city official: "He and his wife took a trip on city business a month ago and he added her expenses in as a part of his own." B responds: "If he did that he is really a thief." B's expression of opinion does

not assert by implication any defamatory facts, and he is not liable to C for defamation.

*Id.* § 566, Illus. 5. In this illustration, B is not liable to C; A would be the liable party—the party responsible for the underlying facts. Instead of republishing what A said, B is merely referencing it. In this circumstance, even if the disclosed facts are false or defamatory, an opinion based on them is still protected. In the context of online publication, courts have recognized protection for opinion where the defendant has provided hyperlinks to facts published by another that form the basis for a statement of opinion. *See Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 704-05 (D. Md. 2000), *aff'd* 11 Fed. App'x 99 (4th Cir. 2001) (defendant's publication of an opinion with an accompanying hyperlink constituted an opinion based on disclosed facts); *Sandals Resorts Int'l. Ltd. v. Google, Inc.*, 86 A.D.3d 32, 43 (N.Y. App. Div. 1st 2011) (defendant's statements were an opinion based on disclosed facts because "each remark is prompted by or responsive to a hyperlink").

It is facially apparent that the statement alleged to be defamatory here asserted an opinion – that the Grand Resort Hotel was the dirtiest hotel in America. (Order at 3.) Seaton cannot allege that this opinion is anything other than a conclusion formed on the basis of reviews, comments, and photographs posted by TripAdvisor's users.[3] TripAdvisor explained the basis for its conclusion by stating

---

[3] Note that Section 230 of the Communications Decency Act, 47 U.S.C. § 230, bars treating TripAdvisor itself as the publisher of the user comments on which the

its list was "according to traveler ratings on cleanliness," and made clear the

opinion was as reported by travelers on TripAdvisor. (Order at 3.) Given that

TripAdvisor specifically disclosed the basis of its opinion and "carefully phrased

[it] in terms of an inference drawn from the facts specified," this Court should not

seek other implied facts. *Yagman*, 55 F.3d at 1440.

### B. The First Amendment leaves determination of the merit of opinions to the marketplace of ideas.

In an attempt to avoid the conclusion that TripAdvisor's "Dirtiest Hotels"

List was a non-actionable opinion based on disclosed facts, Seaton argues that the

List "has a numerical ranking" which does not correlate to the percentage of

travelers who recommended against staying at the hotel, leading him to conclude

that it was created using "flawed methodology or [in an] arbitrary manner."

(Appellant's Br. at 30). As a matter of law, the methodology by which TripAdvisor

reached its opinion is irrelevant, as long as TripAdvisor fully disclosed the

underlying facts and did not itself "communicate any provably false factual

connotation."[4] *Satterfield,* 2004 WL 833291, at *5 (doctor's conclusion that

---

List was based. *See* section II, *infra*. In any event, Seaton concedes that his theory of liability is not based on the facts contained in the user ratings and other disclosed content on which the List relies. (Appellant's Br. at 36-37) ("[T]he defamation allegation in this case is solely directed at the libelous content created entirely by TripAdvisor[.]").

[4] The DMLP does not concede that Seaton's methodology is the preferable one. Seaton bases his alternative methodology not on customers' cleanliness ratings of the hotels, but on the percentage that recommended against staying there.

Tennessee Department of Health commercial vehicle inspector was a "unfit for job responsibilities" was a "medical opinion" based on undisputed medical history); *see also Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 529 (6th Cir. 2007) (finding under Michigan law that because Moody's credit rating is "a subjective and discretionary weighing of complex factors, . . . [there is no basis to conclude] the credit rating itself communicates any provably false factual connotation").

The determination of whether TripAdvisor's opinion based on the disclosed facts is fair or whether TripAdvisor relied upon appropriate methodology is solely the domain of the marketplace of ideas. *See, e.g.*, *Wedbush Morgan Sec., Inc. v. Kirkpatrick Pattis Capital Mgmt., Inc.*, No. 06-cv-00510, 2007 WL 1058947, at *1 (D. Colo. April 6, 2007) (noting in a dispute over a financial analyst's report that "a disagreement over methodology does not make the computations 'false,' but rather reflects policy choices that are not properly the subject of a defamation or disparagement claim"); *Aviation Charter, Inc. v. Aviation Research Grp./US*, 416 F.3d 864, 869 (8th Cir. 2005) (noting in a dispute over a negative airline safety rating that "although [defendant's] comparison relies in part on objectively

---

(Appellant's Br. at 30). Seaton's substitution of a different methodology may help portray the Grand Resort Hotel in a kinder light, but it is no less an opinion than TripAdvisor's. That Seaton quibbles with the conclusions reached by TripAdvisor rather than the fully disclosed, underlying data that TripAdvisor used to reach its conclusion serves to illustrate why his claims must fail.

verifiable data, the interpretation of those data was ultimately a subjective assessment, not an objectively verifiable fact"). As the district court here explained, "neither the fact that [TripAdvisor] numbers its opinion one through ten, nor that it supports its opinions with data, converts its opinion to objective statements of fact." (Order at 12.) Indeed, Seaton cites no authority for the proposition that a non-actionable opinion based on fully disclosed facts somehow becomes actionable if the opinion is reached in an allegedly unscientific or arbitrary manner.

It is not only doctrinally correct for this Court to refuse to judge the ultimate merit of TripAdvisor's opinion, it is entirely consistent with the First Amendment. As the Massachusetts Supreme Judicial Court explained, "expressions of opinion based on disclosed information [are protected] because we trust that the recipient of such opinions will reject ideas which he or she finds unwarranted by the disclosed information." *Lyons v. Globe Newspaper Co*., 612 N.E.2d 1158, 1164 (Mass. 1993); *accord. Sanders v. Smitherman*, 776 So.2d 68, 74 (Ala. 2000) (citing *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985)); *Yagman*, 55 F.3d at 1439. *Lyons* and numerous other cases counsel that where recipients are in full possession of the facts, they are empowered by the First Amendment to make personal judgments as to the ultimate truth of others' analyses of these facts. "The suppression of ideas that would be occasioned by allowing the courts, rather than

13

the 'marketplace of ideas,' to judge expressions of opinion . . . is repugnant to th[e] constitutional guarantee of free speech." *Lyons*, 612 N.E.2d at 1164 (citing *Abrams v. United States,* 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)). "This is the ordinary course in a free society. The response to the unreasoned is the rational[.] . . . [S]uppression of speech by the government can make exposure of falsity more difficult, not less so. Society has the right and civic duty to engage in open, dynamic, rational discourse." *United States v. Alvarez*, 132 S. Ct. 2537, 2550 (2012).[5]

Here, TripAdvisor revealed the facts upon which it based the "Dirtiest Hotels" List, and members of the public are thus empowered to judge this opinion for themselves and refute it if they find it unwarranted. This Court would further the result contemplated by the First Amendment by not substituting its judgment for that of the public.

---

[5] The assessment and reassessment of conclusions based on disclosed facts is the foundation of much legal and policy scholarship. *See, e.g.*, Richard H. Sander, *A Systemic Analysis of Affirmative Action in American Law Schools*, 57 Stan. L. Rev. 367 (2004) (conducting an empirical study of bar passage rates for African-American students and suggesting that the study reveals weaknesses in affirmative action policies); Daniel E. Ho, *Why Affirmative Action Does Not Cause Black Students to Fail the Bar*, 114 Yale L.J. 1997 (2005) (taking Sander's original data and reanalyzing it to argue that it does not support Sander's ultimate conclusion).

## II.  SECTION 230 OF THE COMMUNICATIONS DECENCY ACT BARS LIABILITY FOR AN OPINION BASED ON THE STATEMENTS OF A WEBSITE'S USERS.

As discussed above, Seaton appears to concede that he is not seeking to impose liability on TripAdvisor on the basis of allegedly defamatory statements made by its users. (Appellant's Br. 36-37.) He instead argues that TripAdvisor "developed the offending material . . . [and] created a new actionable message in its production and publication of the '2011 Dirtiest Hotels' [L]ist[.]" (*Id*. at 36.) Yet because Seaton seeks to hold TripAdvisor liable for an opinion based on disclosed facts, if liability exists anywhere, it can only arise from the facts contained in the user reviews. TripAdvisor is squarely protected from liability arising from hosting these reviews on its site by the Communications Decency Act, 47 U.S.C. § 230 ("Section 230").

Section 230 immunizes providers of interactive computer services against liability arising from content created by third parties: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It is indisputable that TripAdvisor provides an interactive computer service. *See* 47 U.S.C. § 230(f)(2) (defining an "interactive computer service" as, *inter alia*, "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server"). An

15

established line of cases recognizes that users contributing reviews or comments to a website are treated as "information content providers" in instances like the one at hand. *See, e.g.*, *Black v. Google, Inc.*, 457 Fed. Appx. 622 (9th Cir. 2011) (negative review of roofing company); *Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010) (negative statements about cat breeders on a discussion board); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) (reviews of local businesses).

Because TripAdvisor qualifies as an interactive computer service under Section 230, it cannot be treated as a publisher or speaker of the user-generated statements underlying its "Dirtiest Hotels" List. Instead, the most that can be said is that TripAdvisor referenced its users' reviews in forming its opinion. And, as established *supra*, TripAdvisor's opinion itself is not actionable because it is based on disclosed facts. Accordingly, no part of TripAdvisor's statement is actionable as a matter of law, and the district court's dismissal of the complaint should be affirmed.

## III.    PROTECTION OF CONCLUSIONS BASED ON USER-SUPPLIED DATA IS ESSENTIAL FOR THE FUTURE OF CROWDSOURCED ACADEMIC RESEARCH AND DATA-BASED JOURNALISM

Consumer review sites such as TripAdvisor are not the only organizations that rely on the knowledge of the crowd to produce analysis valuable to the general public. Scholars as well as news and investigative journalists are using the

unprecedented reach of the Internet to gather, synthesize, and analyze large

amounts of valuable data produced by citizen reporting. C.W. Anderson et al.,

*Post-Industrial Journalism: Adapting to the Present* 24 (2012), http://towcenter.

org /wp-content/uploads/2012/11/TOWCenter-Post_Industrial _Journalism.pdf

(noting that a journalist's role is now to "make relevant requests, and then filter

and contextualize the results"). At a time when "Big Media is cutting back on staff

and resources," citizen-based publishing "expands the information pool" and

provides a public watchdog function. Dan Gillmor, *We the Media* 144 (2006). *See

also* Yochai Benkler, *The Wealth of Networks* 264 (2006) ("Just as the World Wide

Web can offer a platform for the emergence of an enormous and effective almanac,

just as free software can produce excellent software and peer production can

produce a good encyclopedia, so too can peer production produce the public

watchdog function.").

    In many cases, "crowdsourced"[6] individual data points are so numerous that

to verify each would be impossible or impracticable—rather, the amount and

transparency of data lead to overall reliability. *See* Anderson, *supra*, at 24 (stating

that crowds are better than traditional journalists at collecting data, and that

---

[6] "Crowdsourcing" has been defined as the act of "outsourcing [a function] to an undefined (and generally large) network of people in the form of an open call." Darren C. Brabham, *Crowdsourcing as a Model for Problem Solving: An Introduction and Cases*, 14 Convergence: The Int'l J. of Research into New Media Techs., 75, 76 (2008).

platforms for sharing real-time data "provide a range, depth and accuracy of data that simply cannot be matched by individual reporters"). "When there are lots of citizen reporters scrutinizing what other people say, they have a way of getting to the truth, or at least shining a light on inconsistencies." Gillmor, *supra*, at 187. This can be seen in the crowdsourced website Wikipedia, where a study by the journal *Nature* found that the website has a similar rate of errors as the Encyclopedia Britannica. Jim Giles, *Internet Encyclopaedias Go Head to Head*, 428 Nature 900, 900-01 (2005), *available at* http://www.nature.com/nature/journal/v438/n7070/full/438900a.html.

Academic researchers have identified and accepted crowdsourcing as a reliable means of gathering data. A recent study compared research survey results from a traditional university participant pool with survey results from anonymous users of an online site and concluded that the reliability of the data from the crowdsourcing sample was as good as or better than the corresponding university sample and that crowdsourcing had additional benefits of efficiency and greater diversity. Tara S. Behrend et al., *The Viability of Crowdsourcing for Survey Research*, 43 Behav. Res. Methods 800, 800 (2011).

Crowdsourced journalism has provided numerous examples of socially beneficial reporting. For example, such reporting has been used to track election irregularities at a scale that centralized media cannot reach. On Election Day 2012,

18

Slate, an online magazine, was able to publish a report on the amount of time

people in each state waited in line to vote. Benjamin Jackson, *Which State's Voters*

*Had To Wait the Longest, According to Their Tweets?*, Slate (Nov. 6, 2012),

http://www.slate.com/blogs/future_tense/2012/11/06/voting_wait_times_

which_state_s_voters_faced_the_longest_lines.html. Based on self-reporting

pulled from the social media service Twitter, Slate made conclusions, such as,

"most voters in Florida waited around an hour and a half at the polls[.]" *Id.* Slate

also used crowdsourced data to create charts and lists comparing the median wait

times in a number of states. *Id.* Because it could proffer an analysis based on

25,000 self-reported (but unverified) "tweets," Slate was able to quickly and

effectively provide otherwise inaccessible analysis on voting processes. *Id.*

Crowdsourcing has also been used to investigate companies' interactions

with customers, allowing compilation of data that would otherwise either remain

private or require extensive investigation to uncover. For example, Clear Health

Costs, an organization that is attempting to bring transparency to the health-care

market in the United States, has created an online database that provides users with

data on the cost of various medical procedures at different health care providers.

Clear Health Costs, http://clearhealthcosts.com (last visited Jan. 14, 2013). The

organization posts the names of the medical offices with the highest and lowest

reported costs for various medical procedures. *Id.* Some of the data the site uses to

19

generate content comes from users, who send the organization information on what they paid for medical services. Clear Health Costs, FAQ, http://clearhealthcosts. com /faq (last visited Jan. 25, 2013). It would be extremely difficult, if not impossible, for an investigative reporter to create a comparable database of healthcare costs without relying on user contributions. *See generally* U.S. Gov't Accountability Office, Health Care Price Transparency: Meaningful Price Information is Difficult for Consumers to Obtain Prior to Receiving Care (2011), *available at* http://www.gao.gov/products/GAO-11-791.

Even in contexts where information is more easily accessible, investigators have effectively harnessed the power of the community to gather data on pricing. In 2007, The Brian Lehrer Show on NPR affiliate WNYC Radio, asked listeners to report the cost of milk, beer, and lettuce at their local grocery stores and put together a map and list, based on user comments, showing the most and least expensive places to purchase the items. *Are You Being Gouged?*, The Brian Lehrer Show (Sept. 24, 2007), http://www.wnyc.org/shows/bl/2007/sep/24/are-you-being-gouged. The show was awarded a Peabody Award for excellence in journalism that year, in part because of its innovative use of citizen journalism. Press Release, WNYC Radio, WNYC Radio's The Brian Lehrer Show Wins Peabody Award (April 2, 2008), *available at* http://www.wnyc.org/press/wnyc-radios-the-brian-lehrer-show-wins-peabody-award.

International sources have also used this tactic to report on otherwise inaccessible topics. An Indian site operated by a nonprofit organization asks users to report their experiences with public corruption in India. I Paid a Bribe, http://www.ipaidabribe.com/bribepatterns (last visited Jan. 25, 2013). The site currently hosts approximately 20,000 unverified user reports of bribery and relies on them to compile a "Most Bribed Cities" list. *Id.* In Britain, news organization the Guardian asked users to complete online questionnaires regarding their broadband speed and broadband providers. Juliette Garside, *Broadband Britain: how fast is your connection?*, The Guardian, http://www.guardian.co.uk/news/ datablog/2012/may/08/broadband-speed-britain (last visited Jan. 15, 2013). The Guardian used responses to create a map of Britain showing advertised versus real broadband speeds. *Id.*

Crowdsourcing has also been utilized effectively in times of crisis, when traditional media is handicapped. Following the Deepwater Horizon oil spill in the Gulf of Mexico in 2010, CrisisCommons, an organization that creates technological tools to help people respond to natural disasters, *About*, Crisis Commons, http://crisiscommons.org/about (last visited Jan. 25, 2013), released "OilReporter," a mobile application that allowed users to share what they observed along the gulf coast, *Oil Reporter*, Intridea, http://www.intridea.com/oil-reporter# (last visited Jan. 25, 2013). The data was used to map data elements including oil

21

presence and injured wildlife in remote areas and to "help with the recovery effort

by using real-time check-ins to report what they're seeing on the ground." *Id.* The

unverified reports were stored and used by academics at San Diego State

University, and the map and reports are available online. *Crisis Control*, San Diego

State Univ. News Ctr. (Sept. 10, 2010), http://newscenter.sdsu.edu/sdsu_

newscenter/news.aspx?s=72394. This tool allowed researchers, reporters, and relief

workers to have eyes and boots on the ground throughout the affected region, an

otherwise unfeasible undertaking.

     All of these projects draw upon user-submitted data to draw large-scale

observations and conclusions that would not be possible if legal constraints forced

project organizers to gather or verify each datum that was submitted to the project.

Allowing claims to proceed against TripAdvisor in this case would deter content

providers from engaging in the synthesis and analysis of user-produced data,

depriving the public of significant social benefits. If speakers face liability for

expressing opinions based on disclosed but unverified user-produced data, valuable

information and analysis will be shuttered due to fear of legal liability. This would

hinder the innovative approaches investigators and academics are using to provide

significant social benefits, including tracking election irregularities, monitoring

company interaction with consumers, and providing up to date information during

times of crisis. At a time when traditional sources of investigative journalism have

lost significant funding and, consequently, budgets for resource-intensive reporting and legal support, the consequences of creating legal uncertainty around crowdsourcing—a tool that allows reporters to tap into a wealth of new information by harnessing the wisdom of the crowd—would be debilitating and far-reaching.

## CONCLUSION

For the forgoing reasons, this Court should affirm the decision of the court below in favor of TripAdvisor's motion to dismiss for failure to state a claim upon which relief may be granted.

Dated:  February 27, 2013                    Respectfully Submitted,

                                             /s/ Christopher T. Bavitz
                                             Christopher T. Bavitz
                                             Cyberlaw Clinic
                                             Harvard Law School
                                             Berkman Ctr for Internet & Society
                                             23 Everett Street, 2nd Floor
                                             Cambridge, MA 02138
                                             Tel:  617-495-7547
                                             Fax:  617-495-7641

                                             *Attorneys for Amicus Curiae*
                                             *Digital Media Law Project*[7]

---

[7] *Amicus* thanks Cyberlaw Clinic student and DMLP intern Jillian Stonecipher and former Cyberlaw Clinic students Emma Raviv and Andrew Crocker for their work on this brief.

On the brief:

Jeffrey P. Hermes
Andrew F. Sellars
Digital Media Law Project
Berkman Ctr for Internet & Society
Harvard University
23 Everett Street, 2nd Floor
Cambridge, MA  02138

# CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)(C) OF THE FEDERAL RULES OF APPELLATE PROCEDURE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

1.     Exclusive of the exempted portions of this brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), this brief includes 5,508 words.

2.     This brief has been prepared in proportionally spaced typeface using Microsoft Office Word for Mac 2011 in 14 point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied upon the word count of this word-processing system in preparing this certificate.

Dated: February 27, 2013

/s/ Christopher T. Bavitz
Christopher T. Bavitz
Cyberlaw Clinic
Harvard Law School
Berkman Ctr for Internet & Society
23 Everett Street, 2nd Floor
Cambridge, MA 02138
Tel:  617-495-7547
Fax:  617-495-7641

*Attorneys for Amicus Curiae*
*Digital Media Law Project*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief of *Amicus Curiae* with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the appropriate counsel. If any parties or their counsel of record are not registered users, I have served them by placing a true and correct copy of the foregoing document in the United States mail, postage prepaid, to their address of record.

Dated: February 27, 2013

/s/ Christopher T. Bavitz
Christopher T. Bavitz
Cyberlaw Clinic
Harvard Law School
Berkman Ctr for Internet & Society
23 Everett Street, 2nd Floor
Cambridge, MA 02138
Tel:  617-495-7547
Fax:  617-495-7641

*Attorneys for Amicus Curiae*
*Digital Media Law Project*